Mr. Justice Scott, delivered the opinion of the court. The other questions discussed by the eminent counsel for the plaintiffs in error in this case, having been disposed of in the case of Calvert use vs. Lowell, just decided, where his argument and brief in this case was considered, the only remaining one involved in the case at bar relates to the doctrine of part payment. The general doctrine that part payment of either principal or interest will form a new point from which the statute of limitations will begin to run, was recognized and applied by this court in The R. E. Bank vs. Hartfield, 5 Ark. 551, to a case where the part payment had been made before the statute bar had intervened. And in this case it is to be determined whether or not this doctrine is to be so extended that a part payment by one joint and several debtor after the bar of the statute has been per feeted, shall operate to revive the debt not only as to the party making the part payment, but also as to his co-debtor. In reference to the case of The R. E. Bank vs. Hartfield, it was remarked in the case of the State Bank vs. Alston, decided at the last term of this court, that “This doctrine of part payment (which has been derived from a departure from the letter of the statue, which the mos.t enlightened jurists of the present day with more liberal views of just public policy and enlarged experience have not altogether approved) proceeds upon the ground that the part payment is precisely equivalent to an admission that, at the time of the payment, the debt is due, and upon that admission the law implies a promise to pay the balance, which it regards as equivalent to an express promise, on the supposi tion that money is not usually paid and appropriated without deliberation. And that, all these implications and presumptions arising from the fact of, actual part payment, until there be in fact actual part payment of the particular debt to be revived, none of these implications and presumptions can arise. So, if a debt is sought to be revived, not .by part payment but by a written acknowledgment of the debt, that must be an express acknowledgment of the debt as a debt due at that time, or else it must be an express written promise to pay it, which latter necessarily pre-supposes such an acknowledgment, (Davidson vs. Morris, 5 Smedes & Marshall, 571.) The revival both in the one and the other mode standing in principle upon the same foundation, that is to say upon an acknowledgment of a subsisting debt under circumstances from which a promise may be fairly presumed.” And in the case of Brown vs. The State Bank, decided at this term, the nature and character of the promise necessary to save or revive the statute bar has been more distinctly indicated by a reference to, and quotations from, the authorities. The precise recognition and application of the doctrine of part payment, which we are now considering, never had express judicial sanction in England until May, 1829, in the case of Manderson vs. Robertson, then decided in Kings Bench, (4 M. & Ry. 440.) and in May, 1839, the same doctrine was applied in the case of Channell vs. Ditchburn, decided in the Exchequer (5 Meeson & Wilby, 495.) The cases where the doctrine of part' payment had been previously applied by the English court, so far as we have been able to discover, were all like the cases of the R. E. Bank vs Hartfield, where the part payment was made before the bar had attached; and that we are correct in this seems clear both from the agreement of Mr. Platt, who was of counsel in the case last cited, as from the opinion of the court in the same case. Then at the time of the passage of Lord Tenterdon’s act, of which ours is, in the main, a copy, and so. far as.part payment is concerned, an exact copy, the question we are considering had not been settled, otherwise than it may be considered as included in the general doctrine first declared in the case of Whitcomb vs. Whiting, 2 Doug. 652, decided by Lord Mansfield, after our Revolution, in the year 1781, in reference to which doctrine thus first set on foot, the case of R. E. Bank vs. Hartfield was determined by. this court. And as all subsequent decisions in England, and all the cases in the United States are based upon this case, which was a case of a joint and separate promisory note, we shall quote at length the opinion of the judges. Lord Mans* field said, “The question here is only whether the action is barred by the statute of limitations. When cases of fraud appear, they will be determined on their own circumstances. Payment by one is payment by all, the one acting virtually as agent for the rest: and in the same manner an admission by one is an admission by all, and the law raises the promise to pay when the debt is admitted to be due.” Willis, Justice, Said, “The defendant has had the advantage of the partial payment, and therefore must be bound by it.” But although this case was followed by the case of Jackson vs. Fairbanks, 2 H. Black. 340, where its doctrine was applied to the receipt of the money by the payee of a note as dividends, from the assignees in bankruptcy of a joint and several maker, and the co maker, for this part payment, held excluded from the bar of the Statute, and was so strongly sustained by the great name of Lord Mansfield, still its doctrine seems rarely, if ever, to have been received in England without doubt and dissatisfaction. In the case of Clark vs. Bradshaw, 3 Esp. R. 155, Lord Kenyon, at Nisi Prius, expressed some doubts about it and the case went off on another ground. Afterwards, in the ease of Brandram vs. Wharton, 1 Barn. & Ald. 463, Lord Eclenbouough used language from which his dissatisfaction with the whole doctrine may be clearly seen. “ This doctrine,” said he “ of rebutting the Statute of limitations by an acknowledgment other than that of the party himself began with the case of Whitcomb vs. Whiting. By that decision, where, however, there was an express acknowledgment by an actual part payment of a part of the debt by one of the parties, I am bound. But that case was full of hardship, for this inconvenience may follow from it; suppose a person liable jointly with thirty or forty others to a debt, he may have actually paid it, he may have had in his possession the document by which that payment was proved, but he may have lost his receipt. — ■ Then though this was one of the very cases which this Statute was passed to protect he may still be bound and his liability be renewed by a random acknowledgment made by some one of the thirty or forty others, who may be careless of what mischief he is doing, and who may even not know of the payment which has been made. Beyond that case, therefore, I am not prepared to go, so as to deprive a party of the advantage given him by the Statute by means of an implied acknowledgment.” Afterwards, in the case of Atkins vs. Tredgold, (2 Barn. & Cress. 23) decided in King’s Bench, in 1823, where it was held that a part payment by one joint debtor, after the decease of the other, would not render the estate of the latter liable for a debt which would otherwise have been barred, Abbott, C. J., said, “ 'Whitcomb vs. Whiting was relied upon to show that such payment would take the case out of the Statute of limitations. It is not necessary to say whether that case, which is contrary to a former decision in Ventris, would be sustained if reconsidered, but I am warranted in saying by what fell from Lord Ellenborough in Brandram vs. Wharton, 1 B. & A. 463, that it ought not to be extended.” In the same case Bailey, J., said “It is said that a joint promissor having made a payment within six years, the executors of the other are liable and the case of Whitcomb vs. Whiting is relied upon. That is certainly a very strong case and it may be questioned whether it does not go beyond all legal limits. But this case is distinguishable from that in two particulars. Here the Statute appeared to have attached before the payment was made by Robert Tredgold, and therefore when John Tredgold, being at that time protected, could not be subjected to any new obligation by the act of Robert. And secondly, the parties, sought to be charged in this action by means of an implied promise are not those originally liable as was the case in Whitcorrib vs. Whiling. I entirely concur with my Lord Chief Justice that we ought not to extend the doctrine of that case to executors.” ' And Halroyd, J., in the same case said: “ Whitcomb vs. Whiting is the only case that can be relied upon by the plaintiffs. That case has gone far enough,” and, after speaking of another point in the case, he said: “ I much doubt that, but it is unnecessary to decide upon that ground inasmuch as this case is distinguishable from Whitcomb vs. Whiting, even if that be law.” And in the same case, Best, J., said: “The present case is distinguishable from Whitcomb vs. Whiting, beyond which I think the Court ought not to go.” The next year afterwards, however, in the Common Pleas, tbe case of Whitcomb vs. Whiting was recognized, and in. the case of Perham vs. Raynal, 2 Bing. 306, applied against a security, where one of the joint debtors made a part payment within the period of limitations. And also afterwards in the case of Berligh vs. Slott, 8 B. & C. 36, where the payment of interest was made within the six years, in which case, after holding that as to this doctrine there was no distinction between a joint and a joint and several note the Court say “It was a joint debt though there was a several promise by each to pay it. In case oí a joint and several bond, payment by one operates as payment by all; so a release to one is a release to all. In this case Stott has had the benefit of the part payment and he ought to have the burthen. It seems to me that where two persons jointly and severally promise to pay one' and the same sum of money, each of them make» the other his agent for the purpose of making any payment in respect of the sum of money. That being so, then Burleigh made the payment in question as the agent and by the authority of Stott. It was therefore an admission by the latter that the sum remaining due on the note was an existing debt and it operated as a fresh promise by him to pay the same.” We have quoted these observations of the Court that it may be distinctly seen upon what reasoning the doctrine in question is sustained in England. Afterwards in the Common Pleas in the case of Wyatt vs. Hodsdon decided in 1832, after the passage of Lord Tenterdon’s act, it was again held that payment of interest within the six years by one of several joint contractors would take the case out of the Statute as to all, and the reason which we have already assigned for exempting part payment from that Statute was shown. And finally in the cases of Manderston vs. Robertson, 4 Man. & R. 440, decided in 1829 and Channell vs. Ditchburn decided in May 1839, the doctrine of Whitcomb vs Whiting was not only recognized but applied to a case like that before us where the part payment was made after the bar had been perfected; but as the feature of the case of 1829 seems not to have been recollected either by Mr. Platt, who argued both cases, or the Judges who decided both, and was looked into before deciding the case in 1839, it probably cut no figure in that case, and therefore 4he point was not in express terms decided until 1839, and then, upon the general doctrine of Whitcomb vs. Whiting, which is the last case, was for the first time pronounced in terms to be “good law;” although in arriving at that opinion the Court say “ Mr. Platt relied upon the cases of Atkins vs. Tredgold and Slater vs. Lawson as making a distinction and throwing a doubt upon the old case of Whitcomb vs. Whiting, which decided that one of the joint makers of a promisory note might by acknowledgment or part payment take a case out of the Statute as against the other. After these two cases undoubtedly some degree of doubt might fairly exist as to the propriety of the decision in the case of Whitcomb vs. Whiting. And it does seem a strange thing to say that when a person has entered into a joint and several promissory note with another person, he thereby makes that other his agent with authority by acknowledgment or payment of interest to enter into a new contract for him.” And thus it will appear that, although, after fifty-four years of doubt and dissatisfaction, the English Courts have at last min-cingly pronounced the case of Whitcomb vs. Whiting to be “ good law,” it must be conceded that that enunciation rests far more upon the authority of the name of the great Lord Mansfield, of whom Best, C. J., in relation to this very doctrine said in Perham vs. Raynal, “I should be slow to decide that anything which fell from Lord Mansfield is not law, as he had all the requirements requisite to form a great lawyer, and knew human nature in all its branches,” than upon any foundation of reason and justice in the minds of the English Judges. In the United States, Judge Stoby has not hesitated, in his work on Partnerships, to pronounce it an “ unreasoned decision,” supported by a “ mode of reasoning the most inconclusive and unsatisfactory imaginable.” The Supreme Court of New Hampshire, in the case of The Exeter Bank vs. Sulivan & others, 6 New Hamp. Rep. 120, has expressly refused to recognize the doctrine as applicable to any other than the party himself who makes the part payment. And the Supreme Court of Alabama, although it recognized the doctrine as to the party making the part payment (7 Porter’s Rep. 537) refused to extend the principle to a case where the admission was made within the time of limitation, to any other than the party making it. Lowther, et al. vs. Chappell, 8 Ala. 358. Hall et al. vs. Darrington, 9 Ala. 503. Caruthers et al. vs. Murdy's heirs, 3 Ala. 599. And the same limitation to the doctrine has been, in principle, expressly held by the Supreme Court of Pennsylvania in the cases of Searight vs. Craighead, 1 Penn. R. 135, and Levy vs Cadet et al., 17 Serg. & Rawle 127; and to the same effect are the decisions ofthe Federal Court in the cases of Clementson vs. Williamson, 8 Cranch. 72. Bell vs. Morrison, 1 Peters 371. In Virginia, however, New York, Maine, Vermont, Connecticut and South Carolina, the authority of the case of Whitcomb vs. Whiting, and of the other English cases based upon it has been, to a greater or less extent and, in some of these States, to the full extent of the English cases, recognized and applied; upheld, however, in these States, not upon principle but upon authority, and indeed, in some of these States principles have been recognized as applicable to dissolved partnerships inconsistent with the rule of Wood & Braddict, 1 Taunt. 104, and therefore inconsistent with Whitcomb & Whiting. In this conflict of authority, therefore, we may well look to the reasons upon which this doctrine of part payment to the extent that we are now called to apply it, can be sustained before we consent to give it this extension. And in this aspect it may be safely said that the reasons assigned in England as the basis for the whole doctrine, are not broad enough to sustain the extension of it to cases like this before us, even if they be admitted as amply sufficient to sustain cases like that of Whitcomb vs. Whiting as to which we shall not enquire. All the cases English and American admit that the bar of the statute raises a presumption of law “that the cause of action never existed, or that it has been satisfied,” so said Best, C. J. in the case of Perham vs. Raynal, 2 Bing. 306, in the words we have used, and in the same case he says “that from the decision of Hayton vs. Hasting, Carth. 471, down to the present time it has always been holden that a new promise revived the old debt, but does not create a new one.” This revival of the old debt, (not old promise) necessarily presupposes the debt was once extinct-and gone, and that there has been a peried in which it had lost its legal use and validity. “The act which revives it, is what essentially constitutes its new being and is inseparable from it. It stands not by its original force, but by the new promise which imparts vitality to it. Proof of the latter is indispensable to raise the assumpsit on which an action can be maintained. It was this view of the matter which first created the doubt whether it was not necessary that a new consideration should be proved to support the promise since the old consideration was gone. That doubt, however, has been overcome, and it is now held that the original consideration is sufficient if recognized to uphold the new promise although the statute cuts it off as a support for the old. What indeed would seem decisive on this subject is that the new promise if qualified or conditional restrains the right of the party to its own terms, and if he cannot revive by these terms he cannot recover at all.” (Bell vs. Morrison.) Now as it was the promise, that the law implied from the part payment, which gave life to the old debt, it was at once seen that the promise of one could not revive the debt as to several unless all should promise, hence was the necessity for the supposed “virtual agency” spoken of by Lord Mansfield and explained in Parham vs. Raynal to be, “that when two or more persons jointly and severally promise to pay one and the same sum of money, each of them makes the other his agent for the purpose of making any payment in respect of the sum of money.” The agency then, the existence of which is a mere presumption of law, seems to be constituted for the purpose of making any payments in respect of the debt, and for no other purpose. How then can an agency be presumed to continue and exist after the object for which it was instituted has been fully accomplished? and we have seen that, even according to- the English authorities, as soon as the bar is perfected by the efflux of time, the law presumes “that the cause of action never existed or that it has been fully satisfied.” So, according to these very authorities, so soon as the bar attaches, in the very nature of things, the agency has ceased to exist by presumption of law. And under such circumstances to permit the admission of one joint and several obligor by part payment to operate to visit upon the others the debt that the law presumed paid, is as remarkable and would stand very nearly on the same ground as a conspiracy to be proven solely by the admission of one, but to be visited on many; his sdmission not only proving the existence of the conspiracy, but also the number engaged and its scope: or of a prosecution for trespass against several defendants, when the joint tresspass would be allowed to be proven by the admission of one defendant only. The question, under such circumstances, would not be whether the debt once existed, but whether it then existed. And it is admitted that, under the principles of the doctrine of agency as laid down in these cases by the English judges, if the continued existence of the debt be proven aliunde, then the part payment would operate as a promise by all, as the debt having all the time continued, the supposed agency had a corresponding existence. But when is the proof aliunde? the proof and exhibition of the note does not afford this; because the presumption of law that it is paid conclusively overshadows this, and at the time that the party makes the payment all presumptions of law as to community of interest have ceased, and there ■ is no foundation upon which to base any presumption that the payment is on account of any other than the party making the payment. It is true the part payment goes to the extingushment of the debt, and not to the peculiar extinguishment of the several obligations of the party who pays, but this is the act of the law, not the act of the par ty: consequently after the bar has attached, as it is now indis-; pensable to the creation of a new cause of action (the old one having been extinguished) that there should be a promise either express or implied, proof of agency to make this provision must necessarily be made: now how is that attempted to be shown? not by the act of any party, but by the act of the law in making the part payment go towards the extinguishment of the debt which the law has already presumed extinguished, and from which all the parties are by the law discharged. To say that a party may thus charge another, because by the same act he charges himself, is to assign a very unsatisfactory reason, as this same principle would allow of making a new debt, or the confession of ajoint judgment on the same foundation. The truth is there is no just foundation in law or reason, or in the usages of mankind for any presumption of any agency to bring upon one something onerous or prejudicial; nothing short of affirmative proof can establish such an agency. If the principle contended for be correct a joint debtor, although he may have paid the debt and at' the very time when the other party makes the part payment may be standing by and protesting against the act, and, disavowing all authority in that other to act for him, may still be led like a sheep to the slaughter. A principle that is fraught with so much mischief and injustice cannot be recognized as law. If one joint debtor acknowledges a debt to be subsisting, and says nothing to the-contrary, it may be inferred from his silence that he is willing to pay, but his silence can furmish no ground to presume that another who is absent is willing to pay. If the promise, express or implied, which revives the debt, was a mere continuation of the old promise, and was not in fact a new promise imparting vitality to the debt, which before had no legal but only a moral obligation, as we have shown, there would be more show of reason for the doctrine contended for: but as the promise does actually create the cause of action when there was none before, by giving vitality to the debt, it does seem to be indispensable that new authority should be given after the bar has attached, as all previous authority, if any such really was given, must, with the accomplishment of the object for which the law presumed it to have been delegated, necessarily be considered as withdrawn. In a word, when the bar of the statute has attached, the essence of the thing done when the debt is revived, is the ere-ation. of a new right of action on the old debt, and the destruction of a legal defence to any action that before might have been brought on the debt, and this right of defence cannot be taken away without the consent express or implied of the party entitled to it. And in our opinion, a part payment made by a co-promissor alter the bar has attached, unless with the consent and authority of the other, given after the bar has attached, or given before with express reference to such a state of things, £canno4 take from the other his right of defence to an action for recovery of the debt. And finding in the law no warrant to do so, we are therefore unwilling to extend the doctrine of part payment so as to affect others besides the party making the part payment beyond a part payment made before the bar has attached. And finding no error in the judgment of the court below it must be affirmed.